UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

IN RE:
RANDY H. KASSAB and BAN KASSAB,　　　　　Case No. 09-57861-wsd
　　　　　　　　　　　　　　　　　　　　　　　　Chapter 7
　　　　Debtors.　　　　　　　　　　　　　　　Honorable Walter Shapero
_____/

L.H. HAKIM, INC., a Michigan corporation and
LINDA H. HAKIM,
　　　　Plaintiffs,　　　　　　　　　　　　　　Adv. Pro. No. 09-6054

vs.

RANDY HABIB KASSAB,
　　　　Defendant.
_____/

## OPINION REGARDING PLAINTIFFS' ACTION FOR NONDISCHARGEABILITY

### INTRODUCTION

Plaintiffs bring this nondischargeability action against Defendant for alleged misrepresentations, pursuant to 11 USC § 523(a)(2). For the following reasons, this Court finds for Defendant.

### SUMMARY OF FACTS

Around March of 2008, Linda H. Hakim and L.H. Hakim, Inc. ("Plaintiff")[1] entered into a verbal contract with Randy Kassab ("Defendant") (both Plaintiff and Defendant being together also variously referred to as the "Parties") to purchase the Manhattan Deli in Southfield, Michigan ("the Deli"). Their agreement ("Agreement") contained three elements: the sale of the

---

[1] "Plaintiff" and "she" will be used to refer to Ms. Hakim, both individually and as an agent or officer of the corporation, for which it appears she was the sole officer.

1

Deli's physical assets (i.e. its equipment, fixtures, and inventory), a promise that Defendant would assign the lease covering the premises in which the Deli operated to Plaintiff within six months of the sale date, and a promise that Defendant, after the sale, would provide Plaintiff with a written purchase agreement and other supporting financial documents.  Plaintiff paid the purchase price in cash, although there remains a disagreement over the amount, and took possession of the Deli.  She operated the Deli for about fourteen months before effectively abandoning or closing the business due to a decline in revenue.  Plaintiff now brings this adversary proceeding against Defendant for alleged misrepresentations and fraud in the inducement and performance of the contract.  Plaintiff requests repayment of the $53,000 she claims she paid Defendant and that such amount be deemed nondischargeable.

## The Contract and its Enforceability

With regard to the sale of the Deli's physical assets, Defendant argues this aspect of the Agreement is unenforceable because it is a sale of goods not evidenced by a writing, and is thus within the Statute of Frauds.  Under applicable Michigan law, a contract for the sale of goods for $1,000 or more is not enforceable unless in writing.  Mich. Comp. Laws § 440.2201 (1).  The Deli's equipment and inventory qualify as "things… which are movable at the time of identification to the contract for sale" as defined by Mich. Comp. Laws § 440.2105.  Because the Parties agree that the purchase price was above the $1,000 threshold, this agreement must either be evidenced in a sufficient writing or fall under a statutory exception.  The Court finds the agreement enforceable because it satisfies the requirements of two statutory exceptions.

First, Defendant has admitted in pleadings and testimony that such an agreement existed.

> A contract that does not satisfy the requirements of subsection (1) but is valid in other respects is enforceable in any of the following circumstances… If the party against whom enforcement is sought admits in his or her pleading or

> testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this section beyond the quantity of goods admitted.

Mich. Comp. Laws § 440.2201(3)(b); see also Dumas v. Auto Club Ins. Ass'n, 437 Mich. 521 (1991) (citing Brender v. Stratton, 216 Mich. 166 (1921)). Plaintiff and Defendant stipulated that they "entered into a verbal contract whereby Hakim agreed to purchase and Kassab agreed to sell the Manhattan Deli, located in Southfield, Michigan." Joint Pretrial Order (Docket No. 44), ¶ IV: Stipulation of Facts and Law; See also ¶ III: Defendant's Claims). Defendant's testimony at trial confirmed this. Trial Record 168: 2-4, 21-23. Defendant's admission that he was selling *all* the physical assets is sufficient to satisfy the requirement that the agreement contain a quantity term.

Second, the contract is enforceable because Defendant accepted payment for his sale of the Deli.

> A contract that does not satisfy the requirements of subsection (1) but is valid in other respects is enforceable in any of the following circumstances… With respect to goods for which payment has been made and accepted or that have been received and accepted...

Mich. Comp. Laws § 440.2201(3)(c). Defendant agreed that Plaintiff paid him for the Deli and that Defendant accepted this payment. Although the amount of the payment is disputed, the stipulation that payment was made and accepted is sufficient to satisfy the Statute of Frauds requirements and/or the indicated exceptions.

As noted, the Agreement contained a promise whereby, within six months after the sale, Defendant (whose corporation entered into a lease with the landlord that Defendant personally guaranteed) would assign the premises lease ("the Lease") to Plaintiff. Defendant confirmed the existence of this aspect of the Agreement. Trial Record 169: 1-11. Defendant did not raise any

3

defense to the existence or enforceability of this promise. As hereinafter noted, there was part performance, which also would preclude a Statute of Frauds defense.

Lastly, the Agreement contained a promise whereby Defendant would provide Plaintiff with a signed asset purchase agreement and other supporting financial documents, such as receipts and business ledgers. The testimony tends to show that this understanding was implied, rather than expressed. Trial Record 25: 1-3; 57: 18-24.

### PERFORMANCE OF THE AGREEMENT

Plaintiff took possession of the Deli's premises, including the assets. She began operating the business, serving customers, and paying rent to the landlord. Plaintiff also paid taxes and the utilities for the Deli, purchased inventory, and otherwise represented herself to customers as its owner. However, the Lease was never assigned to Plaintiff, Plaintiff claiming that Defendant never even undertook to assign the Lease to her. Defendant claims that he offered to do so, but Plaintiff refused. Plaintiff claims that Defendant did not provide her with the asset purchase agreement or other financial documents. Defendant claims he provided Plaintiff with access to all such documents.

### PLAINTIFF'S CLAIMS OF MISREPRESENTATION

Plaintiff brings this nondischargeability action under § 523(a)(2)(A), which states that a debtor shall not be discharged from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by— false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]" To succeed on such a claim under this section, a creditor must establish that:

4

(1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

In re Grenier, 458 Fed. Appx. 436, 438 (6th Cir. 2012) (quoting In re Rembert, 141 F.3d 277, 280-81 (6th Cir. 1998)) and must do so by a preponderance of the evidence. In re Rembert, 141 F.3d at 281.

It is critical to differentiate between misrepresentation and breach of contract. Under Michigan's law on misrepresentation,

> the material representation must be predicated on a statement that relates to a *past or present fact*. If the material representation in question relates to a *future promise*, the plaintiff's cause of action lies in contract, not fraud. However, there is a recognized exception to this general rule: "A fraudulent misrepresentation may be based upon a promise made in bad faith without intention of performance."

Addy Mach. Co. v. Vantage Industries, L.L.C., 2008 WL 4958688 (Mich. App. 2008) (emphasis added) (citing Hi-Way Motor Co. v. Int'l Harvester Co., 398 Mich. 330, 336 (1976)); Cook v. Little Caesar Enterprises, Inc., 210 F.3d 653, 658 (6th Cir. 2000). An ordinary breach of contract is not the sort of debt that § 523(a)(2) holds nondischargeable. In re Kalinowski, 11-49990, 2012 WL 4736798 (Bankr. E.D. Mich. 2012); In re Sasse, 438 B.R. 631, 648 (Bankr. W.D. Wisc. 2010). Thus, to succeed in this nondischargeability action, Plaintiff has the burden to prove by a preponderance that Defendant **(a) committed a misrepresentation rather than a breach of contract or (b) initially made such promise in bad faith with no intent to ever perform.**

The promise that Defendant would assign the Lease to Plaintiff within six months of the sale is, on its face, a promise for future performance. As to whether Defendant made this promise in bad faith with no intent of performing it, Plaintiff's evidence on this point is weak and fails to

5

meet the burden of proof, particularly in light of Plaintiff's assertion that the volume of business was lower than she expected, due to the fact that the building had been "rapidly" losing tenants, even prior to her purchase of the Deli. Indeed, Plaintiff testified that she abandoned or ceased operating the Deli around May 2009, only about fourteen months after she purchased it. Those facts, coupled with the others hereinafter set forth, support the likely truth of Defendant's assertion that he proffered the Lease assignment and Plaintiff actually refused to accept it, i.e.: why would she want to formally obligate herself on the Lease for a business that was a nearly immediate disappointment to her, that was quickly declining, and that she would later abandon due to a lack of revenue?

On this point and adding to the credibility of Defendant's statement of offering to assign the Lease as promised, it was in Defendant's interest to want to assign the Lease (which was to a corporation and which he personally guaranteed) in an effort to reduce his liability. Because Defendant and his family leased other properties from the same landlord, Defendant would want to avoid defaulting on rent obligations to that landlord. According to Defendant's testimony, when Plaintiff essentially closed the business and stopped paying rent, Defendant's father started paying the rent in an effort to avoid straining the relationship with the landlord. Defendant worked to find a third party buyer for the Deli, and eventually did so and assigned the Lease to this buyer. These facts preclude a finding that Defendant never intended to assign the Lease to Plaintiff and support a conclusion that he tried to do so but was rebuffed.

Nor is Defendant liable for misrepresentation by reason of his alleged failure to provide Plaintiff with an asset purchase agreement or other financial documents. First, Plaintiff relies on the allegation that "despite promising on numerous occasions that [Defendant] *would* provide her with supporting financial documents and a signed Asset Purchase Agreement, he failed to do

so[.]" Plaintiffs' Post Trial Brief § II (A)(1) (emphasis added) (citing Trial Record 25: 1-3; 57: 18-24); see also Trial Record 85: 11-20. This promise is, on its face, a promise for future performance. Plaintiff offered no evidence that Defendant made this promise in bad faith with no intent of performing it.

What militates against such a conclusion is that, by much of Plaintiff's own testimony, she admits that she had, or could have had, access to various documents. Defendant directed Plaintiff to consult and obtain the services and knowledge of Defendant's bookkeeper, who had been managing the finances for the Deli. Plaintiff actually did so, and she contended that the bookkeeper had a deeper knowledge of the Deli than she. If Defendant did not affirmatively supply the information, it thus appears Plaintiff had, or could have had, the ability to get the supporting financial documents she desired.

On the topic of the asset purchase agreement, the Court is persuaded that Defendant gave Plaintiff an asset purchase agreement, however, whether that document fully conformed to Defendant's promise is irrelevant for present purposes. Plaintiff testified that, after the sale, she received the Exhibit 1 purchase agreement, which lists the price at $16,200 and which was signed by Defendant, from the bookkeeper. Plaintiff opted not to sign it because she claims the Agreement's price was actually much higher than it listed.[2] Plaintiff thus admits that she received an asset purchase agreement, though it is unclear whether it conformed to the Agreement by listing the correct price. The Court need not determine this issue of credibility because, even if Defendant broke his promise by giving Plaintiff an agreement with the wrong

---

[2] Plaintiff also admits that, after the sale, she received from Defendant an unsigned purchase agreement that listed the purchase price at $48,000, evidenced in Exhibit 9. Plaintiff asserts the Agreement's actual price was $53,000 and that Defendant asked that the remaining $5,000 be kept off the books for tax purposes.

price, such is, at most, a breach of contract and not a misrepresentation. Plaintiff failed to meet her burden in proving that Defendant made such a promise with no intent to ever perform it.

Plaintiff also alleges Defendant committed a misrepresentation by failing to make her aware of the fact that the office building in which the Deli was located, and upon whose occupants the Deli largely relied for its business, was rapidly losing tenants. A failure to disclose can only rise to the level of a misrepresentation if there was a legal or equitable duty to disclose in the first place. MacDonald v. Thomas M. Cooley L. Sch., 880 F.Supp.2d 785, 798 (W.D. Mich. 2012). "Our review of Michigan Supreme Court precedent regarding this issue reveals that, in every case, the fraud by nondisclosure was based upon statements by the vendor that were made in response to a specific inquiry by the purchaser, which statements were in some way incomplete or misleading." M&D, Inc. v. W.B. McConkey, 585 N.W.2d 33, 39 (Mich. App. 1998) (in the context of the sale of realty) (later cited by MacDonald, 880 F.Supp.2d 785, 798) (in the context of the sale of private law school education services). Plaintiff has not shown that Defendant had any such duty, nor that Plaintiff made a specific inquiry that was met with an incomplete or misleading response. That said, however, Plaintiff alleged the misrepresentation by omission induced her to purchase the Deli, whereas she would have not done so had she been aware of the reality of the Deli's declining business. Plaintiff notes that she trusted Defendant, particularly as he had a better knowledge of the Deli. It is also worth noting that the Parties had common social acquaintances who, at times, appeared to encourage the Parties to enter into the Agreement.

Information about declining building occupancy would likely be material in a sale such as this. But the record shows first that, at most, Defendant only made general affirmations to Plaintiff that the Deli would be "a success," with nothing specifically about the building occupancy. Even assuming, arguendo, that Defendant made a misrepresentation, either by act or

8

omission, Plaintiff is unable to prove the remaining elements. Plaintiff provided no evidence of Defendant's intent to deceive, other than bare and conclusory accusations. Most detrimental to Plaintiff's case for misrepresentation is the lack of justifiable reliance. Under Michigan law, "there can be no fraud where the means of knowledge regarding the truthfulness of the representation are available to the plaintiff and the degree of their utilization has not been prohibited by the defendant." Webb v. First of Mich. Corp., 491 N.W.2d 851, 853 (Mich. App. 1992) (citing Schuler v. Am. Motors Sales Corp., 39 Mich.App. 276 (1972) ("Plaintiff either knew or could readily have discovered every material fact that was known by defendants at the time of the sale.")). To recover for misrepresentation, a party's reliance must be reasonable. Waun v. Universal Coin Laundry Mach., LLC, 267954, 2006 WL 2742007 (Mich. App. 2006); Aron Alan, LLC v. Tanfran, Inc., 240 Fed. Appx. 678, 682 (6th Cir. 2007). These same legal maxims apply as well to Plaintiff's other fraud claims.

As the record shows, Plaintiff visited, or was free to visit, the Deli to see the number of customers it had and could have spoken to the landlord. Such an investigation would have been reasonable and highly advisable from a business standpoint. Further, Plaintiff appears to have relied on Layla Mehdi's knowledge of the Deli. Ms. Mehdi was the mother of Plaintiff's then-boyfriend. She worked at the Deli, both before and after it was sold to Plaintiff, and had originally led Plaintiff to discuss purchasing the Deli from Defendant. Plaintiff had a reliable and trusted source to provide her with inside knowledge about the Deli's business.

Plaintiff makes a major issue regarding Exhibit 10, which is a letter that the landlord wrote to Defendant, prior to Defendant selling the Deli to Plaintiff, temporarily reducing the rental rate because of "reduced [b]uilding occupancy levels." However, Defendant's testimony persuades the Court that Plaintiff was aware that, after she purchased the Deli, she would be benefitting

from a temporary reduction in rent.  Plaintiff could have reasonably concluded this was because of a decline in building occupancy and should have, at the least, inquired into the reason for this rent reduction.  In any event, Plaintiff had every motive and opportunity to engage in due diligence to examine the building occupancy and the Deli's number of customers.  What appear to be blind uninvestigated confidence in Defendant and her own due diligence failures are insufficient to constitute reasonable and justifiable reliance.

Plaintiff makes other allegations, claiming that Defendant committed misrepresentation by telling Plaintiff that her ownership of the Deli would be successful and profitable, which turned out to not be the case.  Plaintiff states that Defendant always communicated "sweet talk" and other affirmations about her potential for success in this business.  Puffing is defined as

> a salesman's praise of his own property, involving matters of estimate or judgment upon which reasonable men may differ.  Ordinarily these are not regarded as actionable, even though the vendee's joys of realization fall short of those of his anticipation.  The reason for this lies in the realities of commercial intercourse.

Van Tassel v. McDonald Corp., 407 N.W.2d 6, 8 (Mich. App. 1987) (quoting Hayes Construction Co. v. Silverthorn, 343 Mich. 421, 426 (1955)).  No action for fraud can be predicated on mere puffing.  Van Tassel, 407 N.W.2d at 8.

## CONCLUSION

For the foregoing reasons, the Court concludes Plaintiff has failed to meet her burden of proof.  An order to this effect is being entered concurrently.

.

**Signed on February 23, 2013**

                                          /s/ Walter Shapero
                            **Walter Shapero**
                            **United States Bankruptcy Judge**